UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADVANCED HAIR RESTORATION LLC,

Plaintiff,

v.

PARSA MOHEBI, M.D., INC.,

Defendant.

CASE NO. 2:24-cv-01008-JNW

ORDER GRANTING DEFAULT JUDGMENT AND MOTION TO SEAL

**INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion for Default Judgment (Dkt. No. 16) and Motion to Seal (Dkt. No. 12). Having reviewed the Motions, the relevant record, and all supporting materials, the Court GRANTS both Motions, ENTERS DEFAULT JUDGMENT, and PERMANENTLY ENJOINS Defendant on the terms set forth in this Order.

**BACKGROUND**

Plaintiff Advanced Hair Restoration LLC alleges that Defendant Parsa Mohebi, M.D., Inc., advertised cosmetic medical procedures related to hair restoration to the public using a trademark which had been previously registered to Plaintiff. (Compl. (Dkt. No. 1) ¶¶ 8–21.) Defendant continuously misappropriated the mark in connection with advertisements throughout Washington and the United States. (Id. ¶ 19.) Defendant alleges that Plaintiff was on notice of the infringement and that Plaintiff's continued use of the marks without Defendant's permission was willlful. (Id. ¶¶ 22, 55–56.)

Plaintiff alleges that Defendant's misappropriation violated the following state and federal laws: (1) Washington Consumer Protection Act (Compl. ¶¶ 23–31); (2) Unfair Competition (Id. ¶¶ 32–35); (3) trademark infringement and counterfeiting claims pursuant to 15 U.S.C. § 1115–17 (Id. ¶¶ 36–47); and (4) state and federal dilution claims (Id. ¶¶ 48–56).

In addition to the allegations in the Complaint, which the Court accepts as true, Plaintiff has presented evidence of Defendant's unauthorized use of the registered marks in advertising materials which were available on a public-facing website and Defendant's YouTube channel as early as March 13, 2024. (Compl. ¶ 17; Declaration of Nik Rusa ¶ 9, Ex. 1 (Dkt. No. 17).) Nik Rusa, President of Advanced Hair Restoration, avers that "[t]he terms 'Advanced' and 'Advanced Hair Restoration' were not associated with hair restoration until Plaintiff['s] practice brought them into mainstream recognition with hair restoration services. (Rusa Decl. ¶ 4.) Rusa claims that Defendant's "unauthorized use of the [m]arks . . . has created brand confusion and irreparable harm to the uniqueness of [Plaintiff's] branding," and attests that several consumers have "come into Plaintiff['s] offices and explained that they were confused because they believed Defendant Mohebi was Plaintiff." (Id. ¶¶ 5, 7.) He further states that Defendant's

employees had previously "reached out to Plaintiff . . . to inquire about employment opportunities." (Id. ¶ 3.)

Plaintiff has served Defendant and obtained entry of default. (Dkt. Nos. 7, 10.) Plaintiff now move for default judgment and entry of a permanent injunction.

## ANALYSIS

### A. Motion for Default Judgment

#### 1. Jurisdiction

Before entering default judgment, the Court must assure itself that it has subject matter jurisdiction and personal jurisdiction over Defendant.

The Court here finds that it has subject jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because Plaintiff has alleged that Defendant's infringement violates the Lanham Act. (Compl. ¶ 5.) And the Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a).

The Court also finds that it has personal jurisdiction over Defendant, a nonresident, due to Defendant's purposeful direction of its activities in this forum, pursuant to Fed. R. Civ. P. 4(k)(2), the federal long-arm statute. (See Compl. ¶ 6.) Under Rule 4(k)(2), personal jurisdiction may be established over a defendant if the claims arise under federal law and: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). To measure whether the exercise of personal jurisdiction is consistent with the Constitution, the Court engages in a "due process analysis [that] is nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." Lang Van,

Inc. v. VNG Corp., 40 F.4th 1034, 1039 (9th Cir. 2022) (citation and quotation omitted). To satisfy due process in this context, Plaintiff must demonstrate that: (1) the nonresident defendant has either purposefully directed his activities at the United States or purposefully availed himself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If Plaintiff satisfies the first two elements, the burden shifts to Defendant to make a compelling case that the exercise of jurisdiction would not be reasonable. Id. To establish "purposeful direction," the Court applies the three-part "effects" test from Calder v. Jones, 465 U.S. 783 (1984), which requires that the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (quotation and citation omitted).

The Court finds that, in this posture, Plaintiff has satisfied the requisite elements of Rule 4(k)(2). First, Plaintiff pursues claims under federal law against Defendant. Second, while Defendant is a Californian corporation—and likely within the jurisdiction of Californain state courts, Plaintiff has presumptively satisfied this prong due to Defendant being found in default. See Talavera Hair Prods. Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd., Case No.: 18-CV-823-JLS (JLB), 2021 WL 3493094, at *9 (S.D. Cal. Aug. 6, 2021) ("absent any statement from [any the defaulted Defendant] that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met.") (citing Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 462 (9th Cir. 2007)). And the Court finds that the exercise of

personal jurisdiction comports with the Constitution. The Court points to three factors supporting this latter finding.

First, Defendant purposefully directed its activities at the United States. All three elements of the "effects" test are satisfied. One, Defendant used its website and YouTube channel to promote its services through the use of Plaintiff's marks. Two, Defendants directed these advertisements to consumers in the United States. Three, it was foreseeable that Defendant's infringing use of the marks would harm Plaintiff in the United States and Washington, where it is located.

Second, Plaintiff's claims arise out of Defendant's forum-based activities. The Ninth Circuit "relies on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Plaintiff has satisfied this by showing that their claims would not exist but-for Defendant's use of the infringing marks in advertising targeted towards consumers in the United States.

Third, because Plaintiff has satisfied the first two prongs of personal jurisdiction under Rule 4(k)(2), the burden shifts to Defendant to show personal jurisdiction is not reasonably exercised here. By failing to appear in this matter, Defendant has conceded that the exercise is reasonable. But for the sake of completeness, the Court has considered this factor and finds that the exercise of personal jurisdiction is reasonable. The Court does so by balancing the following factors:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1021 (9th Cir. 2002). The balance of these factors shows that that the exercise of personal jurisdiction is reasonable. Defendant purposefully directed its activities at the United States. Defaulting defendant has presented no evidence of any burden it would face in defending themselves in this Court or conflicts with the sovereignty of a foreign state. The United States has an interest in making sure that Plaintiff's valid intellectual property rights are protected and this forum can efficiently resolve the conflict. And Plaintiff has an interest in obtaining convenient and effective relief in this Court where there are no alternative fora identified. Accordingly, the Court finds the exercise of personal jurisdiction to be reasonable.

**2. Legal Standard**

The Court has discretion to default judgment. Fed. R. Civ. P. 55(b); see Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In performing this analysis, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true." Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) (quotation and citation omitted). And "[t]he district court is not required to make detailed findings of fact." Id.

**3. Eitel Factors Favor Default Judgment**

The Court reviews the Eitel factors to assess whether default judgment should be entered and in what specific amounts. On balance, the seven Eitel factors weigh in favor of entry of default judgment in Plaintiff's favor.

a. **Factor One: Prejudice to Plaintiff**

Without entry of default judgment Plaintiff will be prejudiced. Plaintiff has attempted to litigate this case and vindicate its rights under state law against Defendant. Defendant failed to appear or participate in this litigation despite being served. Plaintiff faces prejudice by not being able to obtain complete relief on its claims against Defendant without entry of default judgment. This factor weighs in favor of granting default judgment.

b. **Factors Two and Three: Merits of Plaintiff's Claim and Sufficiency of the Complaint**

Plaintiff has demonstrated the merit of its various claims and the sufficiency of the Complaint in supporting those claims.

**Registered Service-Mark Infringement.** To prevail on its Registered Service-Mark Infringement claim, Plaintiff must establish: (1) a protected interest in the mark, and (2) the use of that tmark by a party accused of infringing on the mark is likely to cause consumer confusion. See Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). Federal registration of a mark provides prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is protectable. See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927-28 (9th Cir. 2005).

Accepting the allegations as true and reviewing the declaration from Plaintiff's representative, the Court finds that Plaintiff has proved its infringement claim by demonstrating the following: (1) it owns the marks at issue; (2) it reviewed advertisements made by Defendants

regarding their competing services; (3) it determined those advertisements contained reference to the protected marks; and (4) it adequately alleges that Defendant's infringing use of the marks caused likely (and actual) consumer confusion. The Court finds entry of default on the claim proper.

**Unfair Competition.** "[T]he elements of infringement and unfair competition are essentially the same; the rulings stand or fall together." E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1288 n.3 (9th Cir. 1992); see also 1 McCarthy on Trademarks and Unfair Competition § 2:7 (5th ed.) ("There is no essential difference between trademark infringement and what is loosely called unfair competition. Unfair competition is the genus of which trademark infringement is one of the species; …. All trademark cases are cases of unfair competition and involve the same legal wrong.") (quoting S. Rep. No. 1333, 79th Cong., 2d Sess., 1946 U.S.C.C.A.N. 1275.) Because the Court has found Plaintiff to have adequately pled a claim for trademark infringement, Plaintiff has demonstrated the merit of its Unfair Competition claim.

**Counterfeiting.** As to Plaintiff's counterfeiting claims, Plaintiff must show that (1) Defendant intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use was likely to confuse or deceive. State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005). Although most often discussed with regards to goods, counterfeiting claims may extend to allegations concerning the "advertising of any goods or services," such as those at issue here. 15 U.S.C. § 1114(1)(a).

Accepting the allegations as true and reviewing the declaration from Plaintiff's representative, the Court finds that Plaintiff has proved its counterfeiting by demonstrating the

following: (1) Defendant intentionally used Plaintiff's mark in its advertisements; (2) at the time of use, Defendant knew that the mark belonged to Plaintiff; (3) Defendant's use of the mark was related to its competing business of hair restoration services; and (4) it adequately alleges that Defendant's infringing use of the marks caused likely (and actual) consumer confusion. The Court further finds that Defendant's use of Plaintiff's mark was willful. The Court finds entry of default on the claim proper.

**Dilution.** To prevail its dilution claim, Plaintiff must show "(a) that its mark is famous; (b) that the junior user has made commercial use of the famous mark; (c) that the junior user began using the mark after it had became famous;" and (d) junior user is likely to cause dilution. Horphag Rsch. Ltd. v. Garcia, 475 F.3d 1029, 1036 (9th Cir. 2007); 15 U.S.C. § 1125(c)(1). Accepting the allegations as true and reviewing the declaration from Plaintiff's representative, the Court finds that Plaintiff has proved its dilution claim by demonstrating the following: (1) the marks at issue are famous; (2) Plaintiff used the famous marks commercially through advertising for hair regeneration services; (3) Defendant used the mark on March 13, 2024, after Plaintiff's commercial use; and (4) Defendant's use of the marks resulted in actual dilution in the marketplace. The Court finds entry of default on the claim proper.

c. **Factor Four: Sum of Money at Stake**

Plaintiff alleges that based Defendant's use of the marks reduced its revenue between 2023 and 2024. (Dkt. No. 17 ¶ 6.) As discussed below, the exact amounts are filed under seal, but the Court is satisfied that they are significant enough to weigh in favor of default judgment.

d. **Factor Five: Possibility of Dispute of Material Facts**

The Court finds little possibility that the core, material facts are in dispute. Not only has Defendant failed to appear in this action, but Plaintiff has provided detailed evidence in support of its claims that is likely difficult to be rebutted. This factor favors entry of default judgment.

  e. **Factor Six: Whether Default is Due to Excusable Neglect**

There is no evidence that Defendant's failure to appear is due to excusable neglect. This factor favors entry of default judgment.

f. **Factor Seven; Strong Policy in Favor of Decision on the Merits**

The Court maintains a strong policy preference in favor of resolution of Plaintiff's claims on the merits. But Defendant's decision not to appear in this case vitiates against this policy. This factor weighs in favor of entry of default judgment.

*  *  *

Having considered and balanced the Eitel factors, the Court finds that entry of default judgment is proper on all claims as explained in detail above. On this basis, the Court GRANTS the Motion.

**4. Amount of the Default Judgment**

Plaintiff asks the Court to award statutory damages totaling $2,000,000 against Defendant for its willful and unauthorized use of the copyrighted Photograph. The Court finds the requested amount reasonable.

As Plaintiff correctly notes, it may seek statutory damages of up to $2,000,000 for the willful, unauthorized use of the Photograph. 15 U.S.C. § 1117(c)(2). Here, Plaintiff has alleged that Defendant' unauthorized use of the Advanced Hair mark was willful, which the Court accepts as true, given the posture of this case. (See Compl. ¶¶ 30, 35, 51–52, 55–56.) So while statutory damages would normally be capped at $200,000 per 15 U.S.C. § 1117(c)(1), the Court here finds that the $2,000,000 cap applies due to the willful infringement presented.

With these considerations in mind, the Court finds the requested amount—$2,000,000.00—is reasonable. This amounts to the 2023–24 revenue which Plaintiff claims it lost due to Defendant's infringement, (see Rusa Decl. ¶ 6), along with an additional amount to

serve as a deterrent, consistent with the purpose of statutory damages. See Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 992 (9th Cir. 2009).

**5. Attorneys Fees and Costs**

The Court also finds that an award of attorneys' fees and costs is proper. In a copyright infringement action such as this, the Court may award attorneys'' fees and costs to the prevailing party. See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1556 (9th Cir. 1989). "In deciding whether to award fees under the Copyright Act, the district court should consider, among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." VMG Salsoul, Ltd. Liab. Co. v. Ciccone, 824 F.3d 871, 887 (9th Cir. 2016). Here, the Court finds that these factors support an award of fees and costs. The Court also finds that the rates and hours charged are reasonable, as are the costs. The Court therefore AWARDS $16,417.00 in attorneys' fees and $555.00 in costs.

**6. Injunctive Relief**

The Court finds it appropriate to enter a permanent injunction against Defendants on the terms Plaintiffs request. "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993). And the Lanham Act authorizes "the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1137 (9th Cir. 2006) (quoting 15 U.S.C. § 1116(a)).

A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The Court finds that all four eBay factors favor entry of a permanent injunction. First, based on the admitted allegations in the Complaint, Defendant's trademark infringement has caused irreparable harm to Plaintiff's goodwill and reputation. Second, Plaintiff has shown that monetary damages alone will not necessarily prevent Defendant from engaging in further infringing conduct. Given Defendant's decision not to appear in this case, there can be no assurances that they will no longer engage in the conduct at issue in this case. This satisfies the Court that monetary damages alone are insufficient. Third, the equities favor Plaintiff, who seek to enjoin Defendant from engaging in illegal conduct that benefits only Defendant. This favors Plaintiff and the requested injunction. Fourth, an injunction prohibiting Defendant from engaging in further conduct that infringes on Plaintiff's trademarks will serve the public interest. The Court GRANTS the Motion and ENTERS the following PERMANENT INJUNCTION against Defendant and each of their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this Order from:

    1.    Manufacturing, importing, distributing, circulating, promoting, offering to sell, or selling any product or service using Plaintiff's brand or trademarks, or which otherwise infringes Plaintiff's intellectual property, in any store or in any medium; and

    2.    Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed above.

The Court also retains jurisdiction over this case for the purpose of enforcing this Order and Injunction.

**B. Motion to Seal**

Plaintiff also seeks leave to file under seal unredacted copies of its Motion for Default Judgment (Dkt. No. 16) and the Rusa Declaration (Dkt. No. 17). Plaintiff argues that the unredacted versions of those filings contain "confidential financial information . . . that should not be made available to the public," because doing so "would create a substantial risk of serious harm to the parties," including the potential for competitors to "duplicate, undercut, or otherwise counter the parties' commercial performance." (Mot. at 1–2.)

The party seeking to keep material filed under seal must meet either the "good cause" or "compelling interest" standard. See Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1101 (9th Cir. 2016). The "compelling interest" test applies if "the motion [related to which the materials are filed] is more than tangentially related to the merits of a case." Id. Here, the Court finds that the compelling interest test applies, as the materials Plaintiff asks the Court to seal are "more than tangentially related to the merits of the case." Id.

Under the "compelling interest" test, the Court must "conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." Kamakana v. City & Cty . of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation and quotation omitted). The Court may only seal records if it "base[s] its decision on a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." Id. (citation and quotation omitted). "The burden is on the party requesting a protective order to demonstrate that (1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an

identifiable, significant harm." Foltz v. State Farm Mutual Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003) (citation and quotation omitted). The Local Rules require the party seeking to keep materials under seal to show: (1) "the legitimate private or public interests that warrant the relief sought"; (2) "the injury that will result if the relief sought is not granted"; and (3) "why a less restrictive alternative to the relief sought is not sufficient." Local Civil Rule 5(g)(3)(B). "Evidentiary support from declarations must be provided where necessary." Id.

The Court finds it appropriate to allow the unredacted versions of Plaintiff's Motion for Default Judgment and the Posa Declaration to remain under seal. While Plaintiff does not provide a declaration supporting its claims that disclosure of Plaintiff's financial information would result in competitive harm, the redactions are de minimus and are limited only to specific dollar amounts which are related to Plaintiff's allegations that Defendant's infringing use of its service mark caused harm. It is plain from the face of these documents as to why Plaintiff would have a compelling interest in preventing public disclosure of its yearly revenues and strategic investments in a competitive marketplace.

Therefore, the Motion is GRANTED as to Plaintiff's Motion for Default Judgment (Dkt. No. 16) and the Posa Declaration (Dkt. No. 17). The Clerk is directed to maintain those document under seal.

## CONCLUSION

The Court finds that Plaintiff is entitled to entry of default judgment in its favor and for an order enjoining Defendant from further conduct that violates federal trademark law. As explained above, the Court GRANTS the Motion for Default Judgment, AWARDS $2,000,000.00 in damages, $16,417.00 in attorneys' fees, and $555.00 in costs—a total award of

$2,016,972.00, and PERMANENTLY ENJOINS Defendant on the terms specified above.

Plaintiff's counsel is hereby directed to serve a copy of this Order and Injunction on Defendant.

Additionally, the Court GRANTS Plaintiff's Motion to Seal. Plaintiff's unredacted Motion for Default Judgment (Dkt. No. 16) and the unredacted Posa Declaration (Dkt. No. 17) are to remain under seal.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 6, 2025.

Marsha J. Pechman
United States Senior District Judge